United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 20, 1997 Decided December 30, 1997 

 No. 95-1481

 Daryl Becker, 

 Petitioner

 v.

 Surface Transportation Board and 

 United States of America, 

 Respondents

 T and P Railway, Inc. and 

 American Trails Association, Inc., 

 Intervenors

 Consolidated with

 No. 97-1243

 On Petitions for Review of Orders of the 

 Surface Transportation Board

 Nels J. Ackerson argued the cause and filed the briefs for 
the petitioner. Lynn A. Bulan entered an appearance.


 Evelyn G. Kitay, Attorney, Surface Transportation Board, 
argued the cause for the respondent, with whom Henri F. 
Rush, General Counsel, Ellen D. Hanson, Deputy General 
Counsel, and M. Alice Thurston, Attorney, United States 
Department of Justice, were on brief. J. Carol Williams and 
Jeffrey P. Kehne, Attorneys, United States Department of 
Justice, entered appearances.

 Fritz R. Kahn was on the brief for intervenors American 
Trails Association, Inc., et al.

 Before: Edwards, Chief Judge, Henderson and Rogers, 
Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: Petitioner 
Daryl Becker challenges decisions by the Surface Transporta-
tion Board (STB, Board) and the Interstate Commerce Com-
mission (ICC, Commission) authorizing conversion of a rail-
road right-of-way to trail use under the National Trails 
System Act (Trails Act), 16 U.S.C. ss 1241 et seq. See T and 
P Railway--Abandonment Exemption--in Shawnee, Jeffer-
son and Atchison Counties, KS, Docket No. AB-381, 1997 
WL 68,211 (STB Feb. 7, 1997) (JA A302); T and P Rail-
way--Abandonment Exemption--in Shawnee, Jefferson and 
Atchison Counties, KS, 1995 WL 424909 (ICC July 5, 1995) 
(JA A258).1 Becker, who claims a reversionary interest in 
the right-of-way, contends that the Commission lacked juris-
diction to issue a notice of interim trail use (NITU) on March 
30, 1994 because the right-of-way was abandoned before that 
date. We agree that the right-of-way had been abandoned 
and that the Commission therefore lacked jurisdiction to issue 

__________
 1 The ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 
803, abolished the ICC and created the STB to assume many of its 
functions. The proceeding below spanned the tenure of both bod-
ies.


the NITU.2

 The facts are not in dispute. In 1991 T and P Railway, Inc. 
(T&P) acquired a 41-mile rail line in Kansas from the Atche-
son, Topeka and Santa Fe Railway Co. In September 1992 
T&P applied to the ICC for authorization to abandon the line. 
By decision served April 27, 1993 the ICC granted T&P an 
abandonment exemption pursuant to then 49 U.S.C. s 10505 
(current version at 49 U.S.C. s 10502) and imposed a 180-day 
public use condition on the proposed abandonment pursuant 
to 49 U.S.C. s 10906. The decision further directed T&P to 
notify the Commission within ten days if it was willing to 
negotiate for interim trail use and rail banking pursuant to 
the Trails Act, 16 U.S.C. s 1247(d). After receiving an 
affirmative response, the Commission issued a NITU on May 
25, 1993 authorizing T&P to negotiate a trail use agreement 
with the Kansas Department of Wildlife and Parks during the 
180-day public use period. When the Kansas Department of 
Wildlife and Parks later withdrew, T&P agreed to negotiate 
with the Kansas Department of Transportation (KDOT) until 
the end of the 180-day period but refused to extend negotia-
tions beyond that time. Accordingly, the NITU expired on 
November 27, 1993 with no agreement having been reached. 
In the meantime T&P had canceled its tariffs and removed all 
of the rails and ties from the line.

 More than three months later, on March 2, 1994, the 
American Trails Association, Inc. (ATA) filed with the Com-
mission a statement of willingness to assume financial respon-
sibility for interim trail use and rail banking of the right-of-
way pursuant to 49 C.F.R. s 1152.29(a). On March 10, 1994 
T&P notified the Commission it had negotiated an agreement 
to sell the right-of-way to ATA and requested that another 

__________
 2 The STB recently amended its regulations to require that 
railroads desiring to exercise abandonment authority "file a notice 
of consummation with the Board to signify that it has exercised the 
authority granted and fully abandoned the line." 49 C.F.R. 
s 1152.29(e)(2). The requirement of written notice of abandonment 
should eliminate uncertainty over whether a particular line has been 
abandoned.


NITU issue. By decision dated March 30, 1994, the Commis-
sion reopened the proceeding, determined it retained jurisdic-
tion because T&P had never consummated abandonment of 
the right-of-way and issued the requested NITU. On April 
14, 1994 ATA and T&P informed the Commission that they 
had reached an interim trail use/rail banking agreement.

 On April 27, 1994 Becker filed a petition to reopen the 
proceedings, to rescind the March 30, 1994 decision and to 
dismiss the trail use request for lack of jurisdiction on the 
ground, inter alia, that the right-of-way had been abandoned. 
The Commission denied the petition on July 5, 1995, again 
concluding there had been no abandonment. Becker filed a 
motion for reconsideration on August 8, 1995 and on Septem-
ber 18, 1995 petitioned this court for review of the denial. 
While the petition was pending the Board denied Becker's 
motion for reconsideration on February 7, 1997. On April 8, 
1997 Becker petitioned this court for review of that denial.

 The sole issue before the court is whether the Board and 
the Commission correctly determined that T&P did not aban-
don the right-of-way before the March 30, 1994 NITU issued. 
We conclude that the determinations were unsupported by 
substantial evidence and that Becker's petition for review of 
the Board's decision should therefore be granted.

 "In determining whether a railroad has abandoned a line, 
one must focus on the railroad's objective intent." Consoli-
dated Rail Corp. v. STB, 93 F.3d 793, 799 (D.C. Cir. 1996). 
" 'In determining intent, we look at certain indicia: a line is 
fully abandoned when a certificate of public convenience and 
necessity ... is issued and has become effective, tariffs have 
been canceled and operations have ceased.' " Black v. ICC, 
762 F.2d 106, 112 (D.C. Cir. 1985). Id. at 798 (quoting Iowa 
Power, Inc.--Construction Exemption--Council Bluffs, IA, 8 
I.C.C.2d 858, 863 (1990)). Each of these indicia is present 
here. When the NITU expired, T&P had sought and been 
granted an exemption from the requirement of a certificate of 
public convenience and necessity, see 49 U.S.C. ss 10505, 
10903, had ceased service and had canceled its tariffs. In 


addition, T&P had taken the further step of removing the 
rails and ties from the line. See Consolidated Rail Corp., 93 
F.3d at 798 ("Conrail had gone beyond the indicia of intent 
that the ICC found to be sufficient in Iowa Power ... it had 
... scheduled the commencement of salvage opera-
tions...."). Nevertheless, the Board, relying on Birt v. STB, 
90 F.3d 580, 585 (D.C. Cir. 1996), asserted below that "while 
discontinued rail service, salvaged track, and tariff cancella-
tion are actions often taken in connection with abandonment, 
they also are fully consistent with the lesser action of tempo-
rary cessation of rail operations or trail use" and "are entitled 
to little weight where, as here, the railroad's actions demon-
strate an intent not to abandon by its continued willingness to 
negotiate." 1997 WL 68,211, at *3 (JA A305). The Board 
then concluded that "the railroad's expressed desire and 
intention to continue trail use negotiations beyond the 180-
day period shows that in this case, as in Birt, there was no 
intent to fully abandon the line." Id. Neither Birt nor the 
record supports the Board's position.

 It is true that in Birt the court acknowledged that "cessa-
tion of operations, cancellation of tariffs, salvage of the track 
and track materials, and relinquishment of control over the 
right-of-way ... are equally consistent with temporary cessa-
tion of operations ('discontinuance'), which permits a rails-to-
trails conversion," as they are with permanent abandonment. 
90 F.3d at 585-86. The court then concluded that "to deter-
mine whether the railroad's conduct is abandonment or mere 
discontinuance, we must often look to additional behavior 
which signifies one or the other." Id. at 586. Here, addition-
al behavior signifies abandonment. The sole indication of 
discontinuance cited by the Board is T&P's "expressed desire 
and intention to continue trail use negotiations beyond the 
180-day period," 1997 WL 68,211, at *3 (JA A305). 
T&P's "expressed" intent, however, was to the contrary. In 
its reply to KDOT's request to extend the negotiation period, 
T&P expressed its willingness to accept offers during the 
remainder of the 180-day period but stated unequivocally 
that KDOT's extension request had "come[ ] too late" and 
that T&P was "unprepared to agree to a further six month 


extension." JA A212.3 There is no evidence that T&P 
intended to negotiate further until its March 10, 1994 notifica-
tion that it had reached an agreement with ATA. Given 
T&P's intent to abandon before that time and its expressed 
opposition to extension of the negotiation period, we must 
conclude that when the May 1993 NITU expired on Novem-
ber 27, 1993 abandonment was consummated and the Board 
lost jurisdiction over the line. See 49 C.F.R. s 1152.29(d)(1) 
("The NITU will permit the railroad to discontinue service, 
cancel tariffs, and salvage track and materials, consistent with 
interim trail use and rail banking, 30 days after the date it is 
issued, and permit the railroad to fully abandon the line if no 
agreement is reached 180 days after it is issued, subject to 
appropriate conditions, including labor protection, and envi-
ronmental matters."); Preseault v. ICC, 494 U.S. 1, 5 n.3 
(1990) ("Once a carrier 'abandons' a rail line pursuant to 
authority granted by the Interstate Commerce Commission, 
the line is no longer part of the national transportation 
system, and although the Commission is empowered to im-
pose conditions on abandonments, see, e.g., 49 U.S.C. 
ss 10905(f)(4), 10906 (1982 ed.), as a general proposition ICC 
jurisdiction terminates.").4 The Board then was without jur-
isdiction to issue the second NITU on March 30, 1994.5

__________
 3 Both the Commission's final decision and the Board's denial of 
reconsideration ignore these statements.

 4 We cannot accept the Board's suggestion that T&P's silence 
indicated intent not to abandon. See 1997 WL 68,211, at 3. Not 
only is this view unsupported by precedent or logic--its adoption 
would permit a railroad to sit on an unused line indefinitely with no 
indication of its status. The Board's new regulations requiring 
written notice of consummation avoid this result by providing for 
automatic expiration of abandonment authority after one year if no 
notice of consummation has been filed. See 49 C.F.R. 
s 1152.29(e)(2).

 5 In light of this conclusion we need not address Becker's chal-
lenge to the ATA's qualifications or the adequacy of the STB's 
review of them.


 For the preceding reasons, the petition for review of the 
Board's February 7, 1997 denial of reconsideration is

Granted.